1 J. Joseph Wall, Jr., S.B.N. 120760
LAW OFFICE OF J. JOSEPH WALL, JR.
2 Sixty-Six E. Santa Clara Street, Suite 250
San Jose, CA 95113
3 Telephone    (408) 494-0704
Facsimile    (408) 494-0707
4
E-filing
Attorney for Plaintiff
5 Barry D. Bloom

6
UNITED STATES DISTRICT COURT
7 NORTHERN DISTRICT OF CALIFORNIA

8                                            CV11      0009

9 BARRY D. BLOOM, an individual,      )      CASE NO.:
                                       )
10         Plaintiff,                   )
                                       )      COMPLAINT FOR DECLARATORY
11    v.                                )      JUDGMENT
                                       )
12 EXPRESS SERVICES, INC., a            )
   corporation, and DOES 1 through 20,  )      DEMAND FOR JURY TRIAL
13 inclusive,                           )
                                       )
14         Defendants.                  )
_____)
15
       Plaintiff Barry D. Bloom complains of defendants, and each of them, as follows:
16
                                 **JURISDICTION**
17
       1.    Plaintiff, Barry D. Bloom ("Bloom"), is an individual residing in the County of
18
San Mateo, State of California.
19
       2.    Plaintiff is informed and believes, and thereon alleges, that defendant Express
20
Services, Inc., ("Express"), is a corporation organized and created under the laws of the State of
21
Colorado but licensed to do business in the State of California. At all times mentioned herein,
22
Express conducted business in the Northern District of the State of California through its agent
23
Claimetrics Management, LLC ("Claimetrics"), and had an office in the County of San Mateo,
24

25
                                            1
26 _____
                                       COMPLAINT

1  State of California.

2      3.      The court has original jurisdiction over this action pursuant to 28 U.S.C. §1332.

3      4.      Venue is proper in the Northern District of California pursuant to 28 U.S.C.

4  §1391(a)(2) and 28 U.S.C. §1391(c).

5                          **INTRADISTRICT ASSIGNMENT**

6      5.      Pursuant to Civil Local Rules 3-2(d) and 3-5(b), the San Francisco Division is the

7  proper district because the action arose out of San Mateo County, State of California.

8                          **PRELIMINARY ALLEGATIONS**

9      6.      Plaintiff is informed and believes and thereon alleges that at all times mentioned

10  herein, Claimetrics was the agent of Express Services, Inc., and in doing the things herein alleged

11  was acting within the course and scope of that agency and with the permission and consent of

12  Express.

13      7.      Plaintiff does not know the true names and capacities of the defendants sued herein

14  as Does 1 through 20 and, therefore, plaintiff sues said defendants by such fictitious names.

15  Plaintiff will request leave to amend the complaint to include the true names and capacities of the

16  fictitiously named defendants when they are ascertained.  Plaintiff is informed and believes, and

17  thereon alleges, that each of the fictitiously named defendants is responsible for the occurrences

18  alleged herein and plaintiff's injuries and damages as herein alleged were proximately caused by

19  said defendants.

20      8.      Plaintiff is informed and believes, and thereon alleges, that at all times herein

21  mentioned each of the defendants, whether fictitious or otherwise, was the agent and/or employee

22  of the remaining defendants, and in doing the things hereinafter alleged, was acting within the

23  course and scope of such agency, employment or representation with the knowledge, consent and

24  approval of each of the remaining defendants.

25

26

2

COMPLAINT

**9.** Express Services, Inc., is the largest privately held, temporary staffing company in the United States. Express provides temporary employees and all necessary coverage, including workers' compensation, for companies in many occupations and fields of employment including, light industrial, manufacturing, engineering and law. Express provided payroll and billing services to its franchisees. Hallmark Management served as the third party administrator ("TPA") handling the Express workers' compensation claims. This TPA responsibility and handling of Express' workers' compensation claims was delegated to Hallmark National LLC, ("Hallmark National"), which subsequently became Claimetrics Management. Claimetrics handled the workers' compensation claims process of Express, including its claims management, its data and its financials. Claimetrics was located on the "Express Campus."

**10.** From the inception of the company and throughout its life, all capitalization and funding of Claimetrics came from Express Services, Inc., via its wholly owned subsidiary Express Hallmark. Claimetrics was wholly dependent upon Express to meet operating expenses and Express always kept Claimetrics in debt. All loans to Claimetrics had to be presented to Express and were authorized by Express on an as-needed basis. Claimetrics was undercapitalized and Express would not allow funding or loans to come from other sources, despite the need to meet operating expenses. When Claimetrics and, in particular, Bloom, attempted to obtain financing from other sources, including venture capitalists in Silicon Valley, Express rejected such proposals. Express controlled the organization, focus, funding, financing, and operations of Claimetrics and served as the alter ego of Claimetrics.

**11.** Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Express Services, Inc., owns and has owned more than 50% of Claimetrics. The assets and liabilities of Claimetrics are owned by Express Services, Inc. The finances of Claimetrics are and were combined and commingled with those of Express in such a way that Claimetrics' was

3

1   wholly dependent upon Express for funding to conduct an ongoing business.  Express Services,
2   Inc., served as a partner, owner, investor and client of Claimetrics.  The dominant and controlling
3   role played by Express caused the companies to be so intertwined that Claimetrics' existence,
4   operations and entire enterprise were wholly dependent upon Express.  Plaintiff is informed and
5   believes, and thereon further alleges, that Express received all income generated by Claimetrics
6   and received the tax benefits of all losses incurred by Claimetrics.  Plaintiff is informed and
7   believes, and thereon alleges that, due to Express' ownership and control of Claimetrics, Express
8   Services, Inc., was the sole member, entity or partner who took tax deductions based on
9   Claimetrics' losses.  Express was the only client of Claimetrics.   With the exception of the
10  Express account, Claimetrics had no income-generating accounts further demonstrating the
11  companies' unity of interest and operation as a single enterprise.  Claimetrics' existence and
12  operations were wholly dependent upon Express.

13      12.     In addition to Express controlling the funding and financing of Claimetrics,
14  controlled the operations of Claimetrics. Express and Claimetrics had an overlap of officers,
15  directors and employees.  The Chief Financial Officer ("CFO") of Express, Thomas Richards
16  ("Richards"), simultaneously served as the CFO of Claimetrics.  Richards also served as one of
17  two managers of Claimetrics responsible for all financial, management, operational and business
18  decisions of Claimetrics.

19      13.     Claimetrics' offices were located at the same office site as Express.  Express
20  owned the office complex.  In 2007, Richards committed Claimetrics to pay Express $885,000 per
21  year in rent for 45,000 square feet, amounting to $19.00 per square foot.  The Lease was signed by
22  Richards in his dual capacity as the CFO of Express and as the Executive Vice-President & CFO
23  of Claimetrics.  In July 2008, Express increased Claimetrics' rent to $963,000 per year, which
24  amounted to $21.40 per foot for commercial space in Oklahoma City, forcing Claimetrics to pay

25

26
                                              4
                                        COMPLAINT

**1**  $80,250 per month in rent. Richards again was the only person to execute this amendment to the
**2**  lease, representing both Express and Claimetrics. This grossly inflated lease was designed to raid
**3**  Claimetrics of its money, keep Claimetrics in debt, and put more money in Express' pocket.

**4**  14.    In early 2006, Richards and Marshall Snipes ("Snipes") approached Bloom and
**5**  requested that Bloom serve as the national sales executive of Hallmark National, LLC, which was
**6**  later renamed Claimetrics Management, LLC. Bloom declined the offer. In an effort to retain
**7**  Bloom, Snipes and Richards came back and offered Bloom an ownership interest in the company
**8**  and the positions of President and Chief Operating Officer. Before executing any employment or
**9**  operating agreement, Claimetrics had to receive the consent of Express in order to hire Bloom.
**10**  Bloom was interviewed by the Express owners, Robert Funk ("Funk") and William Stoller
**11**  ("Stoller") at Funk's office on the Express campus.

**12**  15.    Snipes and Richards informed Bloom that Express had approved his hiring
**13**  and Claimetrics and Bloom then negotiated the terms of an employment agreement and an
**14**  operating agreement. Confirming its intent to provide Bloom an ownership interest in Hallmark
**15**  National and as an inducement to have Bloom enter into an employment relationship with
**16**  Hallmark, Hallmark National conveyed to Bloom twenty thousand (20,000) Delta units of capital
**17**  interest in the company, which is now Claimetrics. Bloom became a 21.27% owner of the
**18**  company, the second largest percentage owner of Hallmark National. Express Hallmark Holding
**19**  Company LLC held a 53.30% interest in Hallmark National, which later became Claimetrics.
**20**  This conveyance of Bloom's ownership interest in the company is reflected in a written agreement
**21**  entitled, "Hallmark National LLC Operating Agreement," dated April 21, 2006.

**22**  16.    Simultaneously, Bloom entered into a written employment agreement with
**23**  Hallmark National, entitled "Executive Employment Agreement" dated April 24, 2006, whereby
**24**  Bloom agreed to serve as the President and Chief Operating Officer of Hallmark National for a

**25**

5

**26**

1  guaranteed base salary of three hundred thousand dollars ($300,000) per year. The term of
2  Bloom's employment service to Hallmark National was fixed for three years, ending on April 30,
3  2009. In addition, the Executive Employment Agreement required Hallmark National to provide
4  a car at company expense, maintain a $1,500,000 life insurance policy for Bloom, and provide
5  twenty-five (25) paid days of Personal Time Off ("PTO") each year throughout Bloom's three
6  year term of employment.

7      17.    On November 7, 2007, Claimetrics terminated Bloom's employment with
8  Claimetrics. Prior to the termination, Claimetrics informed Express of its desire to terminate
9  Bloom and received the approval of Express, specifically Funk, to do so. The termination was
10 conveyed in writing to Bloom in a document entitled "Notice of Termination of Employment
11 Agreement" executed by Snipes and Richards on November 6, 2007.

12     18.    On or about November 13, 2007, pursuant to the conditions outlined in section 8.4
13 of the Executive Employment Agreement, Bloom provided written notice to defendants of their
14 breach of a material term and/or provision of the contract. Defendants failed to cure the material
15 breach within ten (10) business days as set forth in section 8.4(I) of the Executive Employment
16 Agreement.

17     19.    On March 17, 2008, Bloom filed a breach of contract lawsuit in San Mateo County
18 Superior Court against Claimetrics ("*Bloom v. Claimetrics* "). The case went to jury trial before
19 the Hon. Lisa A. Novak.

20     20.    On March 19, 2010, the jury returned a verdict in favor of plaintiff Bloom against
21 defendant Claimetrics Management LLC and awarded damages in the amount of $474,000. The
22 jury, in its special verdict, specifically found that Claimetrics breached the Executive
23 Employment Agreement by terminating Bloom's employment "without good cause" before the
24 end of the term. (A copy of the jury's verdict is attached as Exhibit A to the Complaint.) The

25

26

6

**1** court entered judgment in favor of plaintiff totaling $552,372.80.  (A copy of the Judgment is

**2** attached as Exhibit B.)  Claimetrics refused to pay the Judgment or any portion thereof.

**3**    21.    Claimetrics was undercapitalized.  In an effort to make Claimetrics judgment

**4** proof, Express had Claimetrics operate as a shill, without any assets or equity, and had all revenue

**5** generated by Claimetrics passed to Express disguised as repayment of debt and in the form of

**6** rent.  On or about January 22, 2010 Claimetrics filed with the State of Nevada a UCC Financing

**7** Statement identifying Express Hallmark Holding Co as a secured party.  March 5, 2010, Snipes as

**8** the CEO of Claimetrics, executed a Promissory Note specifying Claimetrics owed Express

**9** $15,160,000.00.

**10**    22.    On or about September 27, 2010, Claimetrics filed for dissolution and closed its

**11** doors of operation.  In the Dissolution of Limited-Liability Company filed with the Secretary of

**12** the State of Nevada, Snipes declared that "all debts, obligations and liabilities have been paid or

**13** discharged" and further represented "[t]here are *no suits pending against the company* in any

**14** court or that *adequate provision has been made for the satisfaction of any judgment*, order or

**15** decree which may be entered against it."  (Exhibit C)  This declaration by Snipes on behalf of

**16** Claimetrics was false and constitutes further evidence of the wrong-doing and bad-faith

**17** employed by Express and Claimetrics to perpetrate fraud, circumvent a judgment, and avoid

**18** paying Bloom his earned wages and contracted salary.

**19**    23.    After the dissolution of Claimetrics, Claimetrics transferred to Express its alleged

**20** assets, consisting of computer software and furnishings, and those assets are currently stored in a

**21** warehouse owned by Express and located on the Express campus.

**22**    24.    An adherence to the fiction of the separate existence of Claimetrics and Express

**23** Services, Inc., would sanction fraud, promote injustice, and/or create an inequitable result.

**24** Express served as the alter ego of Claimetrics as demonstrated above and as evidenced by a

**25**

**26**

1   number of factors, including, but not limited to, the following: 1) Express serving as the sole

2   source of funding for Claimetrics; 2) the undercapitalization of Claimetrics; 3) Express operating

3   Claimetrics as a shill, without any real assets or equity; 4)  passing all revenue generated by

4   Claimetrics to Express under the guise of rent and repayment of debt; 5) the overlap of officers,

5   directors, and employees between the two companies; 6) identical equitable ownership in Express

6   and Claimetrics; 7) the unity of business and financial interests of Express and Claimetrics; and,

7   8) both companies' use of the same office and business location.  In order to redress fraud and

8   prevent injustice, the *Bloom v. Claimetrics* judgment should be enforced against Express which

9   served as the alter ego of Claimetrics.

10                              **FIRST CAUSE OF ACTION**

11                           **(Declaratory Relief–FRCP, Rule 57)**

12        25.     Plaintiff realleges and incorporates by reference paragraphs 1 through 24 of the

13   Preliminary Allegations.

14        26.     An actual controversy has arisen and now exists between plaintiff and defendant

15   concerning their respective rights and duties in that Bloom contends that defendant Express

16   Services, Inc., served as the alter ego of Claimetrics and that the judgment plaintiff obtained in

17   *Bloom v. Claimetrics* is enforceable against Express.  Plaintiff further contends that the *Bloom v.*

18   *Claimetrics* judgment should be enforced against Express because Claimetrics was serving as an

19   agent of Express and in doing the things herein alleged was acting within the course and scope of

20   that agency and with the permission, consent, and/or ratification of Express Services, Inc.

21        27.     Plaintiff desires a judicial determination that defendant Express was the alter

22   ego of Claimetrics and/or that Claimetrics served as an agent of Express and that the *Bloom v.*

23   *Claimetrics* judgment be enforced against Express.

24        28.     A judicial determination is necessary and appropriate at this time under the

25                                          8

26   _____
                                        COMPLAINT

1    circumstances in order that plaintiff may ascertain his rights and duties under the *Bloom v.*

2    *Claimetrics* judgment and in order to prevent fraud, injustice and/or an inequitable result.

3

4    WHEREFORE, plaintiff prays for judgment as follows:

5        1.    For a declaration that defendant Express Services, Inc., served as the alter ego of

6              Claimetrics; that Claimetrics served as an agent of Express Services, Inc; and that

7              the judgment plaintiff obtained in *Bloom v. Claimetrics* is enforceable against

8              Express Services, Inc.

9        2.    For damages in the amount of the *Bloom v. Claimetrics* judgment, which is

10             $552,372.83 plus costs of $10,530 as ordered by the trial court, totaling

11             $562,902.83.

12       3.    For interest at the legal rate thereon;

13       4.    For reasonable attorneys fees and costs of suit incurred herein; and

14       5.    For such other and further relief as the Court may deem proper.

15

16                        **DEMAND FOR JURY TRIAL AND SPEEDY HEARING**

17       Pursuant to Federal Rules of Civil Procedure, Rules 38, 39 and 57, plaintiff Bloom

18   demands a jury trial and seeks a speedy hearing of his action for declaratory judgment.

19

20

21                                              RESPECTFULLY SUBMITTED,

22   Dated:        December 15, 2010            LAW OFFICE OF J. JOSEPH WALL, JR.

23

24                                              J. JOSEPH WALL, JR.

25
                                              **9**
26                                          COMPLAINT

# EXHIBIT A

**FILED**
**SAN MATEO COUNTY**

MAR 1 9 2010

Clerk of the Superior Court
By _____
DEPUTY CLERK

1
2
3
4

5       SUPERIOR COURT OF THE STATE OF CALIFORNIA

6       COUNTY OF SAN MATEO

7

8       BARRY D. BLOOM, an individual,                    )     CASE NO. CIV 471235
                                                           )
9                       Plaintiffs,                        )
                                                           )
10      vs.                                                )     VERDICT FORM
                                                           )
11      CLAIMETRICS MANAGEMENT, LLC,                        )
        a Nevada Limited Liability Company;                )
12      HALLMARK NATIONAL, LLC, a                           )     *Complaint Filed: March 17, 2008*
        Nevada Limited Liability Company; and              )     *Trial Date:    February 1, 2010*
13      DOES 1 through 20, inclusive,                       )
                                                           )
14                      Defendants.                        )
        _____                )

15

16          We, the jury in the above captioned matter, find the following special verdict on the

17      questions submitted to us as follows:

18

19      1.      Did CLAIMETRICS MANAGEMENT LLC breach the Executive Employment

20              Agreement by discharging BARRY D. BLOOM before the end of the term of the

21              contract without good cause as defined by that agreement?

22              Yes __✓__      No ____

23

24          If your answer to question 1 is yes, then answer question 2.   If you answered no,

25      stop here, answer no further questions, and have the presiding juror sign and date this

26      form.

27

28      //

                                            1

1    2.       Was BARRY D. BLOOM harmed by the breach of that agreement?

2

3       Yes __✓__     No ____

4

5       If your answer to question 2 is yes, then answer question 3. If you answered no,

6   stop here, answer no further questions, and have the presiding juror sign and date this

7   form.

8

9    3.       What are BARRY D. BLOOM's damages?

10

11       $ _474,000_

12

13

14

15   Dated: March _19_, 2010             _Brandy Medlocke_

16                                 Presiding Juror

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1  J. Joseph Wall, Jr., S.B.N. 120760
   LAW OFFICE OF J. JOSEPH WALL, JR.
2  Sixty-Six E. Santa Clara Street, Suite 250
   San Jose, CA 95113
3  Telephone     (408) 494-0704
   Facsimile     (408) 494-0707
4
   Attorneys for Plaintiff
5  Barry D. Bloom

6

7

8

9  BARRY D. BLOOM, an individual,     )
                                      )
10          Plaintiff,                )
                                      )
11     v.                             )
                                      )
12  CLAIMETRICS MANAGEMENT,           )
    LLC, a Nevada limited liability   )
13  company; HALLMARK NATIONAL,       )
    LLC, a Nevada limited liability   )
14  company; and DOES 1 through 20,   )
    inclusive,                        )
15                                    )
            Defendants.               )
16                                    )
    _____    )
    AND RELATED CROSS-                )
17  COMPLAINT                         )

**ENDORSED FILED**
**SAN MATEO COUNTY**

APR 2 9 2010

Clerk of the Superior Court
By Francoise Espinoza
     DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SAN MATEO

CASE NO.:   CIV 471235

JUDGMENT

18      This action came on regularly for trial by jury on March 8, 2010. Plaintiff, Barry D.

19  Bloom, was represented by J. Joseph Wall, Jr., of the Law Office of J. Joseph Wall, Jr.

20  Defendants, Claimetrics Management, LLC, aka Hallmark National, LLC, was represented by

21  Michael A. Farbstein of Farbstein & Blackman.

22

23      Prior to the case being submitted to the jury, the trial court dismissed the fraud cause of

24  action.

25                                           1

26  _____
                              JUDGMENT

1    A jury of twelve persons was duly impaneled and sworn. Witnesses testified and evidence
2    was presented during the course of the trial. After being duly instructed by the court, the jury
3    deliberated and returned a special verdict which is attached hereto. The Verdict Form is
4    pertaining to the breach of contract cause of action that went to the jury is attached as Exhibit A.
5
6    It appearing by reason of the special verdict and the polling of the jury which took place on
7    March 19, 2010, plaintiff Bloom is entitled to judgment against defendant Claimetrics
8    Management LLC in the amount of $474,000 plus prejudgment interest pursuant to California
9    Civil Code Section 3287(a) at the legal rate of ten percent (10%) from the date of harm.
10
11    Prejudgment interest accrues separately for each monthly loss of compensation from the
12    failure of payment by Claimetrics Management LLC on the plaintiff's employment contract,
13    commencing on the last day of the month of November 2007 (partial month beginning on the
14    plaintiff's last day of employment (November 7, 2007), December 2007, January 2008, February
15    2008, seriatim, through April 2009. Defendants owed Bloom $20,188.94 for the month of
16    November 2007 and $26,333.33 every month thereafter for seventeen (17) months ending on
17    April 30, 2009.
18
19    Based upon this formula, the prejudgment interest to the date of the judgment is calculated
20    to be $78,372.80.
21
22    THEREFORE, IT IS HEREBY ADJUDGED AND DECREED that plaintiff Barry D.
23    Bloom recover $474,000 in compensatory damages from defendant Claimetrics Management,
24    LLC, plus prejudgment interest in the amount of $78,372.80, for a judgment totaling $552,372.80.
25
                                                    2

26                                          JUDGMENT

1  The judgment shall bear interest at the legal rate, which is presently ten percent (10%).

2

3      It is further adjudged and decreed that plaintiff Bloom is the prevailing party and is

4  entitled to costs of the suit herein, subject to any motion to strike filed by defendant.

5                                                   *Lisa A. Novak*

6  DATED:   April 23, 2010
                                        _____
7                                        HON. LISA NOVAK
                                         Judge of the Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                          3

26                                      JUDGMENT

# EXHIBIT C



*130702*



**ROSS MILLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4520
(775) 684-5708
Website: www.nvsos.gov

| **Dissolution of<br>Limited-Liability Company**<br>(PURSUANT TO NRS 86.531) | | Filed in the office of <br><br>Ross Miller<br>Secretary of State<br>State of Nevada | Document Number<br>**20100731196-70**<br>Filing Date and Time<br>**09/27/2010 7:33 AM**<br>Entity Number<br>**E0304912006-6** |

USE BLACK INK ONLY · DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

### Articles of Dissolution
### for a Nevada Limited-Liability Company
### (Pursuant to NRS 86.531)

**1. Name of the limited-liability company:**

Claimetrics Management, LLC

**2. The undersigned declare the following:**

(a) All debts, obligations and liabilities have been paid and discharged or that adequate provision has been made therefore.

(b) All remaining property and assets have been distributed among its members in accordance with their respective rights and interests.

(c) There are no suits pending against the company in any court or that adequate provision has been made for the satisfaction of any judgment, order or decree which may be entered against it in any pending suit.

**3. Signatures (must be signed by a manager, or if there is no manager by a member):**

X _____

**Signature (manager or member)**

**FILING FEE: $100.00**

**IMPORTANT:** Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State NRS 86.531 DLLC Dissolution
Revised: 3-2-10