IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY D. BLOOM, | No. C 11-00009 CRB |
| Plaintiff, | **ORDER GRANTING MOTION TO TRANSFER** |
| v. | |
| EXPRESS SERVICES INC., | |
| Defendant. | |

Plaintiff Barry D. Bloom obtained a jury verdict for damages against Claimetrics Management, LLC ("Claimetrics")[1] for breaching its employment contract with Plaintiff. Claimetrics dissolved less than a year after that judgment, and Plaintiff filed a complaint for declaratory relief against Defendant Express Services, Inc.  Plaintiff seeks to collect his judgment against Claimetrics against Defendant on the theory that Defendant is an alter ego of Claimetrics, or, in the alternative, that Claimetrics was acting as Defendant's agent.

Now before the Court is Defendant's motion to transfer venue to the Western District of Oklahoma.  The Court GRANTS the motion.

//
//
//

---

[1] Claimetrics was originally named Hallmark National, LLC. Compl. (Dkt. 1) ¶ 14. For purposes of this order, "Claimetrics" refers to the entity even when it was still known as Hallmark National.

## I. BACKGROUND

On April 24, 2006, Plaintiff entered into a written employment agreement in which Plaintiff agreed to serve as the President and Chief Operating Officer for Claimetrics. Compl. (Dkt. 1) ¶ 16. On November 7, 2007, Claimetrics terminated Plaintiff, which served as the basis for Plaintiff's March 2008 breach of contract lawsuit in San Mateo County Superior Court. Bloom v. Claimetrics, No. CIV471235 (San Mateo Cnty. Super. Ct.); Compl. ¶¶ 17, 18. On March 19, 2010, the jury awarded Plaintiff damages, with judgment totaling $552,372.80. Compl. ¶ 20. On September 27, 2010, Claimetrics filed for dissolution in Nevada and declared that "adequate provision [had] been made for the satisfaction of any judgment," but Claimetrics never paid the judgment to Plaintiff. Id. ¶¶ 20-22, Ex. C.

Because Claimetrics is now judgment-proof, Plaintiff seeks to enforce the judgment in Bloom against Defendant. Id. ¶ 26. Plaintiff filed the present lawsuit seeking a declaration by the Court that Defendant was the alter ego of Claimetrics.[2] Id. ¶ 27. Plaintiff alleges that Defendant "controlled the organization, focus, funding, financing, and operations of Claimetrics." Id. ¶¶ 10, 24.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer the venue of an action "[f]or the convenience of parties and witnesses, in the interest of justice." District courts have discretion to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (internal quotations and citations omitted). A motion to transfer should not merely shift the inconvenience from the moving party to the opposing party. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). To prevail on a motion to transfer, a moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been

---

[2] Plaintiff alternatively seeks a declaration that Claimetrics was Defendant's agent and acted within the course and scope of that agency when it breached its contract with Plaintiff, and thus the judgment is enforceable against Defendant. Compl. ¶¶ 6, 26, 27. Plaintiff relies on the same facts for bot theories.

2

1  brought; and (3) that the transfer will serve the convenience of the parties and witnesses and
2  will promote the interests of justice. See Goodyear Tire & Rubber Co. v. McDonnell
3  Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992).  The parties here do not dispute the
4  first two factors and focus their disagreement on the third.

5  When considering a motion to transfer venue, the factors a court may consider
6  include: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the
7  convenience of the witnesses; (4) the ease of access to evidence; (5) the familiarity of each
8  forum with the applicable law; (6) the feasibility of consolidation of other claims;[3] (7) any
9  local interest in the controversy; and (8) the relative congestion and time to trial in each
10 forum.  See Vu v. Ortho-McNeil Pharm., Inc., 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).

## III.   ANALYSIS

In the present case, the balance of the factors favors transfer of the action to the Western District of Oklahoma.

### A.   Private Interest Factors

#### 1.   Plaintiff's Choice of Forum

A plaintiff's choice of forum is usually entitled to deference and should only be disturbed if a defendant can "make a strong showing of inconvenience." Decker Coal Co., 805 F.2d at 843.  However, "the degree to which courts defer to the plaintiff's chosen venue is substantially reduced . . . where the forum lacks a significant connection to the activities alleged in the complaint." Carolina Cas. Co. v. Data Broad. Corp., 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (quoting Fabus Corp. v. Asiana Exp. Corp., No. C-00-3172 PJH, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001)).

Here, Plaintiff's choice of forum is entitled to minimal deference.  Plaintiff chose this district, and the events or acts that serve as the basis for the judgment in Bloom occurred in this district.  However, this action concerns Plaintiff's alter ego allegation; the alleged facts supporting this claim are based in the Western District of Oklahoma.  Plaintiff alleges that Claimetrics's rental agreement for its Oklahoma office, Compl. ¶ 13, its capitalization and

---

[3] Plaintiff only has one claim for declaratory relief in this action, so this factor does not apply.

3

funding, id. ¶ 10, its overlap of officers, directors and employees with Defendant, id. ¶ 12, Defendant's share of ownership of and commingling of finances with Claimetrics, id. ¶ 11, Defendant's receipt of income and tax benefits from Claimetrics, id., and Claimetrics's liquidation, id. ¶ 23, all support the conclusion that Defendant is the alter ego of Claimetrics. All of this, if it occurred, occurred in Oklahoma, where Defendant is and where Claimetrics was headquartered. Bostwick Decl. (Dkt. 12-1) ¶¶ 4, 6. The activities that refute Plaintiff's allegations would also have happened in Oklahoma. Because the relevant disputed acts supporting Plaintiff's alter ego theory of relief occurred in Oklahoma, Plaintiff's choice of forum is given little deference and only slightly favors denial of transfer.

## 2. Convenience of the Parties

While considering the convenience of the parties, it is proper to consider "the relative means of the parties." Williams, 157 F. Supp. 2d at 1107. "If the gain to convenience to one party is offset by the added inconvenience to the other, the courts have denied transfer of the action." STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551, 1556 (N.D. Cal. 1988).

Here, Plaintiff is an individual and alleges economic hardship and limited resources to prosecute in Oklahoma, in contrast to Defendant, a billion-dollar-sales-generating corporation that is "flush with cash." Opp'n (Dkt. 15) at 7. This argument would support denial of transfer, but Plaintiff provides no evidentiary support that he would suffer hardship. Id. Therefore, under Civil Local Rule 7.5a, the Court does not rely on this allegation.

The Court also notes that Defendant could more conveniently defend in Oklahoma because it is headquartered there, and the employees testifying on its behalf reside in Oklahoma. Bostwick Decl. ¶¶ 4, 11. Yet, convenience to Defendant would come at the cost of inconvenience to Plaintiff, who resides in California, Opp'n at 6. Therefore, under STX, Inc., this factor favors denial of transfer.

## 3. Convenience of the Witnesses

The district in which the majority of the witnesses are located is often considered the convenient venue. See, e.g., Foster v. Nationwide Mut. Ins. Co., No. 07-04928-SI, 2007 WL 4410408, at *8-10 (N.D. Cal. Dec. 14, 2007). In balancing the convenience of the witnesses,

4

a court discounts any inconvenience to the parties' employees because the parties can compel such witnesses to testify without subpoena. Getz v. Boeing Co., 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008). Besides the number of witnesses, a court also takes into account "the materiality and importance of the anticipated witnesses' testimony." Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335-36 (9th Cir. 1984).

Here, each of Defendant's nine key witnesses resides in Oklahoma. Bostwick Decl. ¶ 11. Each witness is expected to testify about one or more of the following topics from personal knowledge: Claimetrics's operations, funding, policies, assets and liabilities, contracts, and circumstances surrounding dissolution, and Express's operations and relationship and contacts with Claimetrics. Id. Of Defendant's witnesses, only Anthony Bostwick and Robert Fellinger are current employees and thus compellable.[4] Id. ¶¶ 10, 11(h); Reply (Dkt. 16) at 6 n.1. The other witnesses are nonparties who reside outside the subpoena radius of this Court. See Fed. R. Civ. P. 45(b)(2)(B) (subpoena power extends outside a district only if it is served "within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection").

Plaintiff argues that having five of Defendant's seven nonparty potential witnesses testify about Claimetrics's operations is cumulative and that four of these should be excluded. Opp'n at 9. Based on the summaries of what each witness would testify to, at least Robert Barnum should not be excluded on the basis of cumulative testimony because he is the only witness expected to testify about Claimetrics's business opportunities. Bostwick Decl. ¶ 11(d). Even assuming that the remaining three witnesses are cumulative and excludable, Defendant would still have four key nonparty witnesses outside the reach of the Court's subpoena power.

---

[4] Plaintiff incorrectly asserts that two witnesses that are former employees of Defendant are also compellable. See Opp'n at 9. Former employees are considered third party witnesses. See, e.g., Mayberry v. Int'l Bus. Machs. Corp., No. CV 09-1369 CW, 2010 WL 1814436, at *5 (N.D. Cal. June 25, 2009).

5

Plaintiff presents a list of eight witnesses who are California residents in support of his argument that venue in California is more convenient for nonparty witnesses.[5] Wall Decl. (Dkt. 15-1) ¶ 1. However, Plaintiff's witnesses are also cumulative. Only two witnesses, Michael Dillingham, M.D., and Jack Immendorf, provide noncumulative testimony on Defendant's role in the funding, operations, culture and policies of Claimetrics. See id.

After considering the number, materiality and importance of each party's nonparty witnesses, on balance, Oklahoma serves as a more convenient venue for witnesses, and this factor supports transfer.

### 4. Ease of Access to Evidence

The accessibility of sources of proof also factors into whether a case should be transferred. "Given technological advances in document storage and retrieval, transporting documents between districts does not generally create a burden." Brackett v. Hilton Hotels Corp., 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008) (internal citation omitted). If the movant argues that transfer would ease access to evidence, the movant must state "whether the evidence is composed of hard copies which would need to be reproduced and moved, or whether the evidence is electronic in form and could be reproduced in physical form at any location." Getz, 547 F. Supp. 2d at 1084. Nonetheless, "[l]itigation should proceed where the case finds its center of gravity." See Hoefer v. U.S. Dep't of Commerce, No. C 00-0918 VRW, 2000 WL 890862, at *3 (N.D. Cal. June 28, 2000).

Here, the relative ease of access to evidence supports transfer to the Western District of Oklahoma. The relevant documents and records (rental contracts and service contracts between Defendant and Claimetrics, Claimetrics's service contracts with other clients, and

---

[5] Defendant notes that all of those witnesses' testimony will be predominately hearsay based on the statements of one of Defendant's owners, or a former employee of Defendant (Thomas Richards, one of Defendant's potential witnesses), and therefore insubstantial and inadmissible. Reply at 5. However, these witnesses' testimony might be admissible under the agent's admissions exception to hearsay, Fed. R. Evid. 801(d)(2)(D), or can come in for purposes of impeachment, id. at 801(d)(1). The hearsay statements are also related to Plaintiff's alter ego theory, covering topics such as Defendant's funding of and imposition of policies on Claimetrics and the structure and relationship between Defendant and Claimetrics. Wall Decl. ¶ 1. That the testimony is in the form of hearsay rather than personal knowledge does not necessarily impact its materiality or importance to the issues in the action, and a "jury could potentially attach great weight to [such] evidence." See Shalaby v. Newell Rubbermaid, Inc., No. C06-07026 MJJ, 2007 WL 3144357, at *5 (N.D. Cal. Oct. 24, 2007).

1  Claimetrics's and Defendant's corporate records and policies) are located in Oklahoma.
2  Bostwick Decl. ¶¶ 7-8; Mot., Ex. 2 (Dkt. 12-2) 12:20-13:3, 22:25-23:19.  Defendant and
3  Claimetrics negotiated and executed agreements in Oklahoma.  Bostwick Decl. ¶ 9.
4  Additionally, evidence supporting Plaintiff's allegation that Claimetrics transferred physical
5  assets to Express would exist in Oklahoma–Plaintiff himself claims that those assets,
6  "computer software and furnishings[,] . . . are currently stored in a warehouse on the
7  'Express Campus'" in Oklahoma.  Opp'n at 5.  This suggests that evidence would be more
8  accessible in Oklahoma.

9       Plaintiff makes two relevant arguments.  First, he argues that Defendant does not
10 satisfy the requirement under Gertz to state whether the documents and records would be
11 electronically available.  Id. at 9-10.  Plaintiff asserts that Defendant could easily produce
12 such agreements and records through electronic means, and therefore accessibility to such
13 evidence for both parties would be the same whether the action is in California or Oklahoma.
14 Id. at 10-11.  Yet, Plaintiff's arguments do not take into account that "the center of gravity"
15 of the case is Oklahoma, other evidence that is not electronically transmissible exists only in
16 Oklahoma, and third parties maintain control and custody of many of the relevant documents.
17 At this point, the Court cannot determine whether the evidence in Oklahoma would be
18 readily available if the lawsuit stayed in the Northern District of California.

19      Second, Plaintiff argues that access to court records and trial transcripts of the Bloom
20 action in San Mateo County Superior Court support denial of the transfer motion.  Id. at 10.
21 However, none of these documents, which concern the underlying breach of contract claim in
22 Bloom, bear on Plaintiff's current claim based on an alter ego theory.  Therefore, this
23 argument fails to undermine Defendant's position that the parties would have easier access to
24 the evidence in Oklahoma.

25      None of the physical evidence is located in California.  There is greater accessibility
26 to the evidence of alter ego liability in Oklahoma.  Accordingly, this factors weighs in favor
27 of transfer.
28 //

7

**B.     Public Interest Factors**

**1.     Familiarity with the Applicable Law**

Where the defendant seeks transfer under section 1404(a), the transferee district court applies the state law of the transferor court. Van Dusen v. Barrack, 376 U.S. 612, 639 (1964). Federal courts have equal ability to address claims arising out of state law. See Skyriver Tech. Solutions, LLC v. OCLC Online Computer Library Ctr., Inc., No. C 10-03305 JSW, 2010 WL 4366127, at *5 (N.D. Cal. Oct. 28, 2010).

Here, California substantive law on alter ego liability would apply if transfer is granted. Because a district court in Oklahoma would be equally able to interpret California state law as this Court, this factor is neutral with respect to transfer.

**2.     Local Interest in the Controversy**

Plaintiff argues that California has a substantial interest in ensuring that businesses comply with its laws and in enforcing judgments rendered in California. Opp'n at 10; Florens Container v. Cho Yang Shipping, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002).[6] Plaintiff alleges that because Defendant does business in California, Defendant cannot "run away from its obligations" but should be held accountable in California. Opp'n at 10. Plaintiff further contends that the location where relevant agreements were negotiated and executed plays a role in whether a venue has a local interest in the action. Id. (citing Getz, 571 F. Supp. 2d at 1084). Because Plaintiff's employment and ownership agreements with Claimetrics were negotiated and executed in California, Plaintiff alleges that California has a

---

[6] At the hearing, Plaintiff cited Florens Container for his position that California has a substantial interest in the action and the Court should deny transfer to Oklahoma. However, Florens Container is distinguishable. The plaintiff there sued for breach of two container lease agreements and the court issued a temporary protective order against CYS. Florens Container, 245 F. Supp. 2d 1086, 1087. To obtain release from the protective order, CYS assigned to the plaintiff the right to receive payments from some of CYS's freights that were loaded or discharged from vessels within California. Id. CYS went bankrupt, id. at 1087 n.1, and the plaintiff sued a holder of competing interests, id. at 1086. The court there found a substantial connection to California because the "basis of the current action arises out of [the plaintiff's] efforts 'to enforce its perfected security interest in freights collected by CYS for cargo loaded or discharged from a vessel in California.'" Florens Container, 245 F. Supp. 2d at 1092 (emphasis added) (quoting Pl.'s Opp'n to Mot. to Dismiss at 8:17-19). Here, the action consists of enforcing a judgment against Defendant on Plaintiff's alter ego theory, which arises out of activities and conduct that occurred in Oklahoma.

8

local interest in this lawsuit. Id. Such arguments, however, do not support denial of the transfer for three reasons.

First, while California has an interest in this controversy, Oklahoma has a more substantial interest. Although Defendants conduct business in California, Oklahoma has an interest in deciding controversies involving businesses headquartered there, and that employ a substantial number of its citizens. See Skyriver Tech. Solutions, LLC, 2010 WL 4366127, at *5. Defendant's principal place of business is in Oklahoma, with employees and owners that are Oklahoma residents. Mot. at 20; see Bostwick Decl. ¶ 11.

Second, the two agreements Plaintiff cites are irrelevant to this action. The employment and ownership agreements concern the breach of contract claim in the underlying action resolved in Bloom, and Defendant is a party to neither. Reply at 6. These two agreements would play little to no role in the determination of whether Defendant is the alter ego of Claimetrics.

Third, under Getz, because the contracts among Defendant, Claimetrics, and third parties that concern Plaintiff's claim were negotiated and executed in Oklahoma City, Oklahoma has an even stronger interest in this controversy. Id. at 7. Accordingly, this factor favors transfer to Oklahoma.

### 3. Relative Congestion and Time to Trial

District courts in the Western District of Oklahoma are less congested than courts in the Northern District of California and require less time to bring cases to trial. Judges in the Western District of Oklahoma averaged 254 cases in 2010, while judges in the Northern District of California averaged 523 cases. Mot., Ex. 4 (Dkt. 12-4). The backlog of civil cases over three years old in California was 12.8%, while it was only 4.6% in Oklahoma. Cases in Oklahoma district courts, on average, took 8.5 months from filing to disposition, while the disposition time in California was 9.8 months. Id. Lastly, cases in Oklahoma took 16.4 months from filing to trial, while cases in California took 21.5 months. Id. This factor favors transfer.

//

9

## IV. CONCLUSION

Overall, a majority of the factors favor transfer of Plaintiff's claim for declaratory relief to the Western District of Oklahoma. For the foregoing reasons, the Court GRANTS the motion and exercises its jurisdiction to transfer venue to the Western District of Oklahoma.

**IT IS SO ORDERED.**

Dated: April 19, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE